UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| Deborah C. Aumand, Executor of the Estate of Katherine Coffey, and Francis Coffey, Individually | ) ) ) ) ) | |
| v. | ) ) | Docket No. |
| Dartmouth Hitchcock Medical Center | ) ) ) | |

COMPLAINT

The Parties

1.  The plaintiff, Deborah C. Aumand, is a resident of Vermont and lives at 10 Hyde Street, Bellows Falls, Vermont 05101, and is the Executor of the Estate of Katherine Coffey, having been appointed by the Westminster, Vermont Probate Court on January 17, 2006.  Katherine Coffey resided at 36 Oak Street in Bellows Falls, Vermont prior to her death and was a domiciliary of Vermont.  Mrs. Coffey's date of birth was September 16, 1926.

2.  The plaintiff, Francis Coffey, is a resident of Vermont and lives at 36 Oak Street, Bellows Falls, Vermont 05101.  Mr. Coffey is the surviving husband of Katherine Coffey, having been married on August 21, 1948.

3.  The defendant, Dartmouth Hitchcock Medical Center ("DHMC ) is a hospital licensed pursuant to New Hampshire RSA 151 to provide medical services in the State of New Hampshire and has a business address of One Medical Center Drive, Lebanon, NH 03766.

1

### Jurisdiction and Venue

4. The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

5. Venue is proper in this district pursuant to 28 U.S. C. § 1391 because the events and omissions giving rise to the claims at issue occurred within New Hampshire and the defendant is subject to personal jurisdiction within the district.

### General Allegations

6. At all times relevant to this complaint, the defendant held itself out to the public as qualified to provide medical care to sick and elderly patients in accordance with the standards of medical care required of hospitals.

7. On August 23, 2005, Mrs. Coffey was admitted to DHMC for coronary bypass and aortic valve replacement surgery. Following successful surgery, she was discharged home on August 30, 2005.

8. On Thursday, September 1, 2005, Mrs. Coffey was readmitted to DHMC because of shortness of breath and pleural effusions. Initially she was admitted to a procedure room and the nurse started a 22-gauge catheter IV with normal saline running.

9. At approximately 2:30 p.m. (1430 hours), Mrs. Coffey's blood sugar was determined to be low at 45. A nurse administered an ampule (amp) of D-50 (glucose) by injection into an intravenous port attached to the 22-gauge catheter in Mrs. Coffey's left hand.

10. At approximately 3:30 p.m. (1530 hours), Mrs. Coffey was transferred to the ICU. According to the hospital records, Mrs. Coffey was not receiving any running

fluids at that time. Thereafter, Mrs. Coffey's blood sugar was again noted to be low but she remained conscious and cooperative. At approximately 4:30 p.m. (1630 hours), a ½ amp of D-50 was administered through the 22-gauge catheter. At approximately 5:45 p.m. (1745 hours), an amp of D-50 was administered in the same manner. Again, at approximately 8:30 p.m. (2030 hours), another ½ amp of D-50 was administered through the same catheter. According to the hospital records, Mrs. Coffey was not receiving any running fluids when these D-50 doses were administered.

   11.   At approximately 8:45 p.m. (2045 hours), Mrs. Coffey's left hand was noted to be blue and swollen. The catheter was removed from her hand and a new IV was started in the antecubicle space (elbow) with a larger gauge catheter and fluids were administered. At approximately 11:30 p.m. (2330 hours), Mrs. Coffey's hand was again noted to be blue and cold. Her pulses were normal.

   12.   At approximately 3:00 a.m. (0300 hours) on Friday morning, Mrs. Coffey complained of numbness in her hand. At approximately 4:00 a.m. (0400 hours), Dr. Daniel Gibson, an intern, contacted the pharmacy for advice on how to treat D-50 infiltration. Dr. Gibson noted that Hyaluronidase was administered to "decrease irritation from extravasated dextrose…

   13.   At approximately 5:00 a.m. (0500 hours), Mrs. Coffey's forearm was noted to be tender and her fingers still swollen, but she did not have pain in her hand. At approximately 9:00 a.m. (0900 hours), a vascular consult was obtained for D-50 "hand IV  infiltration. The hand was noted to be more swollen on the dorsum where the IV had been placed. At approximately 10:43 p.m. (2243 hours), Mrs. Coffey was seen by

Christopher Demas, a plastic surgeon, who noted that Mrs. Coffey's hand was blue "secondary to IV infiltrate that caused significant irritation to the veins .

14. During the next five days, Mrs. Coffey received wound care at DHMC at which time she was transferred to Springfield (Vermont) Rehabilitation Center. At Springfield, wound care was provided in accordance with the recommendations of DHMC; however, Mrs. Coffey's hand continued to deteriorate. On September 22, 2005 it was noted that she had mummification of fingers 2, 5 and severe ischemic changes to thumb pulp and fingers 3, 4.

15. On September 29, 2005, Mrs. Coffey was readmitted to DHMC to amputate digits 2, 5 and the tip of 3. During the procedure, dead tissue was d brided and skin was taken off down to the tendons.

16. On September 30, 2005, Mrs. Coffey was discharged from DHMC and transferred back to Springfield Rehabilitation.

17. On October 12, 2005, purulent drainage was noted to be coming from Mrs. Coffey's wound.

18. On October 13, 2005, Mrs. Coffey was noted to have a large amount of bloody drainage from her hand wound.

19. Mrs. Coffey was seen by Dr. Christopher Demas at the plastic surgery clinic on October 18, 2005. Dr. Demas determined Mrs. Coffey's hand would require skin grafting and her third finger partially amputated.

20. On October 19, 2005, Mrs. Coffey was discharged home for follow-up with visiting nurses.

4

21. On November 8, 2005, Mrs. Coffey was admitted for skin grafting at DHMC in same day surgery.

22. On November 15, 2005 at a follow-up appointment, Dr. Demas felt there was infection at the wound site and the abdominal donor site and Mrs. Coffey was placed on an antibiotic, Cipro.

23. One week later on November 22, 2005, Dr. Demas again saw Mrs. Coffey and determined that the skin was nearly a total loss.

24. On November 26, 2005, Mrs. Coffey was admitted to the Springfield Hospital with complaints of shortness of breath and dry heaves. She decompensated after admission with high fever, low blood pressure and respiratory distress. Mrs. Coffey's white count was 22,000 indicating a serious infection. Blood cultures taken before antibiotics were administered were found to be positive for methicillin-resistant staphylococcus aureus (MRSA) which is found frequently in patients who have been admitted to hospitals and health care facilities. Mrs. Coffey was placed on a ventilator less than 24 hours after admission and suffered a cardiac arrest in the ICU.

25. On November 27, 2005, Mrs. Coffey died of sepsis secondary to her hand infection. As noted in the autopsy report by Dr. Victoria Bessinger on November 28, 2005:

> "The most likely immediate cause of death is cardiac arrhythmia due to destruction of portions of the conducting system by the infection and associated inflammatory reaction. The route of entry of the infection may have been the healing surgical wounds from recent amputations of two fingers and part of a third on the left hand and a skin graft on the dorsum of left hand.

## COUNT I – MEDICAL MALPRACTICE

26. The pushing of D-50 through a 22-gauge catheter into the hand under the circumstances presented was a violation of the standard of care.

27. The failure to promptly recognize that the IV had infiltrated and caused extravasation into the hand was a violation of the standard of care.

28. As a proximate result of these violations of the standard of care, Mrs. Coffey suffered a horrible, painful death, endured conscious pain and suffering, the probable duration of her life was greatly shortened and her estate incurred expenses and other damages.

## COUNT II – LOSS OF CONSORTIUM

29. Francis Coffey is the surviving spouse of Katherine Coffey having been married on August 21, 1948.

30. As a result of the injuries suffered by his wife, Mr. Coffey has been deprived of the care, comfort and society of his wife for which he is entitled to be fairly compensated.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

31. Francis Coffey and Katherine Coffey were married on August 21, 1948 and had a successful marriage and loving relationship.

32. Mr. Coffey was aware that his wife had been injured by the conduct of the employees of DHMC and observed the ongoing attempts to treat his wife from September 1, 2005 until her death on November 27, 2005. At the same time that the health care providers were attempting to treat Mrs. Coffey's medical injuries, Mr. Coffey attempted to provide his wife with comfort and emotional support. During that time, he

6

observed Mrs. Coffey deteriorate physically and emotionally, including the amputation of her fingers and ultimately her death.

33. As such, Mr. Coffey suffered the sensory and contemporaneous experience of his wife being injured by the defendant's conduct.

34. As a result of the emotional trauma of his experience, Mr. Coffey lost 35 pounds and required medical treatment. He has been treated by his doctors who placed him on antidepressants and has seen a counselor for emotional distress.

WHEREFORE the plaintiffs request fair compensation for their damages in an amount within the jurisdictional limits of the federal court, together with interest and costs.

    Respectfully submitted,
    Deborah C. Aumand, Executor of the Estate
    of Katherine Coffey and
    Francis Coffey, Individually
    By their attorneys
    UPTON & HATFIELD, LLP

By:    /s/ Gary B. Richardson
    Gary B. Richardson/Heather M. Burns
    10 Centre St., P. O. Box 1090
    Concord, NH 03302-1090
    (603) 224-7791

Dated: 11/20/06